IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT ROCCO, | : | CIVIL ACTION NO. **3:CV-03-1216** |
| | : | |
|    Plaintiff | : | (Judge Caputo) |
| | : | |
|    v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
|    Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g), wherein the Plaintiff, Robert Rocco, is seeking review of the decision of the Commissioner of Social Security ("Commissioner") which denied his claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433.

## I.  PROCEDURAL HISTORY.

The Plaintiff protectively filed his current application for DIB on July 24, 2002, alleging disability since December 3, 1998, as a result of a hearing problem. (R. 12-13).  The Plaintiff's application was denied initially, and a timely request for a hearing was filed on December 9, 2002. (R. 61-62).  A hearing was held before an Administrative Law Judge ("ALJ") on April 16, 2003. (R. 20-54).  The Plaintiff was denied benefits pursuant to the Administrative Law Judge's decision of April 22, 2003. (R. 9-17).

Plaintiff sought review of the Administrative Law Judge's decision by the Appeals Council on May 13, 2003. (R. 8).  The Plaintiff's request for review was denied on June 16, 2003 (R. 4-6),

thereby making the Administrative Law Judge's decision of April 22, 2003, the "final decision" of the Commissioner.  That decision is the subject of this appeal.

The relevant time period in this case is July 24, 2002, (the protective filing date of Plaintiff's current application) through April 22, 2003 (date of the decision of the Administrative Law Judge).

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 8-9).

## II. STANDARD OF REVIEW.

When reviewing the denial of Social Security Disability Insurance benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity
> that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national

economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520 (1990). *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. 20 C.F.R. §§ 404.1520, 416.920 (1995).

The first step of the process requires the Plaintiff to establish that he has not engaged in "substantial gainful activity." *See* C.F.R. §§ 404.1520(b), 416.920(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that he is unable to perform his past relevant work. *See* 20 C.F.R. § 404.1520(e), 416.920(e). The Plaintiff bears the burden of demonstrating an inability to return to his past relevant work. *Plummer*, 186 F.3d at 428. Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy

that the Plaintiff is able to perform, consistent with his medically determinable impairments, functional limitations, age, education and past work experience.   20 C.F.R. §§ 404.1520(f), 416.920(f).  This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors.  *Id.*

The Administrative Law Judge proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 16-17).  In reaching this conclusion, the ALJ first determined that the Plaintiff met the disability status requirements of the Social Security Act and continued to meet those requirements through the date of the ALJ's decision. (R. 13, 16).  The ALJ found that the Plaintiff engaged in substantial gainful work activity January 2, 2000, through June 16, 2000. (R. 13, 16).  He next determined that the medical evidence of record established that the Plaintiff had an impairment that was severe, bilateral sensorineural hearing loss. (R. 14, 16).  Further, the ALJ determined that the Plaintiff did not have an impairment or combination of impairments severe enough to meet or medically equal the criteria set forth in 20 C.F.R. § 404, Subpt. P, App. 1, Regs. No. 4. (R. 14, 17). The ALJ found that the Plaintiff's allegations regarding his limitations were generally credible. (R. 15, 17).

The ALJ determined that the Plaintiff has the residual functional capacity for work that does not require acute hearing, frequent social interaction, or exposure to hazardous work environments and further determined that the Plaintiff did not have any exertional limitations. (R. 15, 17).  The ALJ held that the Plaintiff was unable to perform any of his past relevant work. (R. 16-17).  Thus, the ALJ found that the Plaintiff met his burden at Step Four, and the inquiry moved to Step Five.

4

The final and fifth step requires an analysis of whether the Plaintiff, based on his age, experience, education, and residual functional capacity and limitations, can perform any other work in the national economy.  *See Plummer v. Apfel*, 186 F.3d at 428; *Burnett v. Comm. of SSA*, 220 F.3d 112, 126 (3d Cir. 2000).  Thus, at this step, the Commissioner must demonstrate that the Plaintiff is capable of performing other available work in order to deny a claim of disability.  20 C.F.R. § 404.1520(f); *Plummer*, 186 F.3d at 428.  In making a disability determination, the ALJ must analyze the cumulative effect of all of the Plaintiff's impairments.  20 C.F.R. § 404.1523; *Plummer, supra.*  Based on the testimony of an impartial vocational expert, the Administrative Law Judge concluded that, considering the Plaintiff's age, educational background, work experience, and residual functional capacity ("RFC"), he is capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (R. 20, 21).  Specifically, the vocational expert testified that a hypothetical individual with Plaintiff's background and restrictions could work as an inspector, hand packager, assembler, and machine operator with 50,000 such jobs in the state of Pennsylvania and 2,600 jobs in the Plaintiff's region. (R. 16-17).

## IV.  DISCUSSION

The Plaintiff was born on February 15, 1945. (R. 69).  He was 58 years old at the time of the hearing before the ALJ and is currently age 59. (R. 24, 69).  He has a limited (ninth grade) education. (R. 24).  His past work experience includes that of mental health aide, which is classified as medium exertional and skilled. (R. 34).

On appeal, the Plaintiff argues that the ALJ erred in finding that the testimony of record did not establish that the Plaintiff could not engage in substantial gainful activity because the ALJ's decision was not rational, was not based on the evidence, and was contrary to applicable case law.

The Third Circuit has held, with respect to hypothetical questions posed to vocational experts, that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). A hypothetical question posed to a vocational expert "must reflect *all* of a claimant's impairments." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (emphasis added). In *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), the Third Circuit stated that "[w]here there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." (citations omitted). When an ALJ's hypothetical question to the vocational expert sets forth the plaintiff's limitations as supported by the record, the vocational expert's testimony may be accepted as substantial evidence in support of the ALJ's determination that the plaintiff is not disabled. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

At the hearing before the ALJ, the Plaintiff testified that he could read and write and could add and subtract. (R. 24-25). In December of 1998, he went to have his hearing checked and was told that he must have done a lot of lip reading. (R. 25). At his previous job as a mental health aide, he could not hear the phone ring and could not hear announcements over a speaker but was able to watch television and play cards with the patients. (R. 25). The Plaintiff testified that he stopped working because he retired and because the job was getting scary as patients were beating up employees. (R. 25-26). The Plaintiff further testified that if he was not old enough or had not worked long enough to be able to retire, he would have probably kept on working despite his

6

hearing problem. (R. 25-26).  To the best of his knowledge, the Plaintiff does not have any physical problems that affect his ability to work. (R. 26).  In order for the Plaintiff to hear someone speaking to him, they need to be looking right at him so that he can read their lips and there needs to be minimal background noise. (R. 26-27).  The Plaintiff can't hear a phone ring and is able to drive, but usually lets his wife drive because he could not hear if another car was honking. (R. 27-28).  The Plaintiff generally keeps himself busy during the day, testifying that he washes clothes, cooks and "fiddle[s] around outside." (R. 29).  He cannot hear another person talking to him on the telephone. (R. 29).  When questioned by his attorney, the Plaintiff testified that he no longer worked at his mental health aide job, partly because something could be going on behind him that could result in someone getting hurt, and he would not be able to hear it. (R. 29-30).  The Plaintiff's hearing aid also rings, but he cannot hear it. (R. 30-31).

The Plaintiff's wife testified that the Plaintiff cannot hear people on the other end of the telephone and cannot hear cars honking at him on the road. (R. 31-32).  The Plaintiff's wife further testified that the Plaintiff recently became disturbed when he attended a wedding and was unable to socialize with the other guests, so he went and sat by himself in the corner. (R. 32-33).  When questioned by the Plaintiff's attorney, the Plaintiff's wife testified that sometimes when she is talking to her husband, he just walks away because he cannot hear her. (R. 33).

At the Plaintiff's hearing, the ALJ asked the vocational expert whether a hypothetical individual with the Plaintiff's age, education, and work experience, with no physical restrictions who needs to be looking at people when they are talking to him and shouldn't have to deal with phone conversations on a regular basis, would be capable of performing substantial gainful activity. (R. 39).  The vocational expert testified that such an individual would be capable of working as an

7

inspector, with 17,290 jobs in the state of Pennsylvania and 1,180 jobs in the northeast region of Pennsylvania; a hand packer, with 16,500 state jobs and 980 regional jobs; machine operator, with 24,300 state jobs and 660 regional jobs; assembler, with 18,140 state jobs and 2,470 regional jobs; and production worker, with 17,290 state jobs and 1,180 regional jobs. (R. 39-42, 50).  The vocational expert further testified that the Plaintiff's inability to hear something going on behind him could cause difficulty in a work situation, but he did not believe that the remedy would involve an extremely significant accommodation. (R. 43-44).  According to the vocational expert, the job of inspector sometimes involves work being brought to an individuals work area where he or she removes the materials, inspects them, fill out forms regarding the inspection, and places the items on the side. (R. 45).  The hand packer position sometimes involves working at a conveyor belt or working at a work area where the items are brought to them, in addition to filling out sheets, putting labels on items, and putting items to the side for removal. (R. 45).  The vocational expert also testified that there would be background noise in these situations, as well as in the machine operator job. (R. 46).  The vocational expert stated that while it is possible that a machine could malfunction such that the malfunction could be heard before it could be seen, in most cases, the machine would have a safety feature that would shut it down before the situation became dangerous. (R. 46-47).  The vocational expert did concede that if a machine were to repeatedly malfunction such that the malfunction could be heard and not seen and the safety mechanism did not shut it down, an employer would then probably not tolerate the Plaintiff's hearing problem. (R. 48).  It would also be difficult for the Plaintiff to socialize at his work area when he was supposed to be working, nor would he be able to notice the person working next to him asking for help unless that person tapped him on the shoulder. (R. 48-49).  None of the jobs identified by the

vocational expert require interaction with co-workers in terms of the job tasks, but might involve social interaction during breaks or interaction with a supervisor when necessary. (R. 50-51).

The Plaintiff argues that the ALJ erred in accepting only part of the vocational expert's testimony when he found that the Plaintiff was capable of performing substantial gainful activity. Specifically, the Plaintiff contends that the judge, in reaching his determination, relied upon the existence of a "sterile workplace" that does not exist in reality.  In his decision, however, the ALJ never expressly limits the Plaintiff to a "sterile" environment, but rather limits the Plaintiff to work that does not require acute hearing or frequent social interaction which is not performed in a hazardous work environment. (R. 15).  The vocational expert also never testified regarding "sterile" work environments, but rather, he testified regarding jobs that would not require interaction with co-workers in order to complete work-related tasks. (R. 50-51).  The vocational expert never testified "that in a perfect world, that is a 'bubble' world, [the Plaintiff] may be able to perform work." (Pl. Br. at 7).  Rather, the vocational expert testified that an individual who had the residual functional capacity to perform work that does not require acute hearing or social interaction, unless the person stands in front of him, that does not take place in a hazardous work environment, would be capable of working in jobs that exist in significant numbers in the national economy. (R. 15-16, 34-54).

The Plaintiff further asserts that he would be incapable of working due to the embarrassment and humiliation associated with the inability to interact with his co-workers. Neither the Plaintiff nor his wife testified that humiliation and embarrassment were a factor in his decision to work, nor does the Plaintiff's Brief point to any other evidence of record that supports this allegation.  While the Plaintiff's wife did testify that the Plaintiff became upset because he could

9

not interact with other guests at a wedding, a wedding reception is not analogous to a work environment, particularly a work environment that does not require interaction with co-workers as was specifically included by the ALJ in his determination of the Plaintiff's residual functional capacity. (R. 15, 32-33, 39-42).   On the contrary, the Plaintiff initially testified that he stopped working because he retired and would probably still be working if he was not old enough or had not worked long enough to retire. (R. 25-26).   The Plaintiff did also express a concern for his safety which, when questioned by his attorney, the Plaintiff stated was related to his hearing problem. (R. 29-30).   The Plaintiff also raises the issue of safety in his Brief, alleging that health and safety issues render him unable to work.   The ALJ's determination of the Plaintiff's residual functional capacity specifically states that the Plaintiff should not work in hazardous environments, however, and the vocational expert testified that most machines have safety features incorporated within the machinery such that the machines shut down completely when there is a malfunction. (R. 15, 47).

The Plaintiff next asserts that the inability to interact in a large majority of situations would affect the Plaintiff's ability to work in a customer service position.   This argument is irrelevant, as the jobs identified by the vocational expert in his testimony and the ALJ in his decision include those of inspector, hand packager, assembler, and machine operator, none of which are customer service positions. (R. 16, 39-42, 50).   The Plaintiff also argues that background noise would impact his ability to work as a hand packer, assembler, or inspector, but the vocational expert did not testify that such noise would affect the Plaintiff's ability to perform work, but rather, his ability to "hear and pay attention to things" as testified to by the Plaintiff. (R. 45).   There is certainly a difference between being unable to perform work and having one's ability to "hear and pay

10

attention to things" impacted, as the vocational expert testified that the jobs he identified "would not involve a great deal of use of the hearing." (R. 39).

The Plaintiff further asserts that the ALJ erred in finding the Plaintiff and his wife credible but failing to account for their testimony regarding the Plaintiff's limitations in his daily activities. As examples of these limitations, the Plaintiff points out that he cannot drive, he cannot answer a telephone, and he cannot speak with an individual unless they are in a room with direct face to face contact. None of the positions cited by the vocational expert require the Plaintiff to drive, and when posing his hypothetical question to the vocational expert, the ALJ specifically stated that the Plaintiff should not be required to deal with phone conversations on a regular basis and needs to be looking at people when they are talking to him. (R. 39). Moreover, the Plaintiff testified regarding his daily activities that he keeps pretty busy, doing things like washing clothes, cooking and "fiddl[ing] around outside." (R. 29).

Thus, the ALJ did not err in finding that the Plaintiff was capable of performing substantial gainful activity that existed in significant numbers in the national economy.

## V. RECOMMENDATION.

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal be denied.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: March 15, 2004**

11

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT ROCCO, | : | CIVIL ACTION NO. **3:CV-03-1216** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **March 15, 2004.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3,  which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where

12

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


s/ Thomas M. Blewitt
THOMAS M. BLEWITT
United States Magistrate Judge


Dated: March 15, 2004